UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ALAN B. MCREYNOLDS,<br><br>                    Plaintiff,<br><br>        v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of the Social Security<br>Administration,<br><br>                    Defendant. | CASE NO. 3:15-cv-05510 JRC<br><br>ORDER ON PLAINTIFF'S<br>COMPLAINT |

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and

Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S.

Magistrate Judge and Consent Form, Dkt. 5; Consent to Proceed Before a United States

Magistrate Judge, Dkt. 6). This matter has been fully briefed (*see* Dkt. 17, 18, 19).

After considering and reviewing the record, the Court concludes the ALJ did not

err when reviewing the medical evidence regarding plaintiff's physical impairments.

However, the Court finds that the ALJ did err when he failed to discuss significant

probative evidence offered by Dr. Wheeler of plaintiff's functional limitations related to his mental impairments. Had the ALJ considered the additional limitation assessed by Dr. Wheeler, the residual functional capacity ("RFC") may have included additional limitations. In addition, the ALJ erred in part in his evaluation of plaintiff's testimony and the lay witness statement of plaintiff's sister, Mary Schmidt.

Because these cumulative errors are not harmless, this matter is reversed pursuant to sentence four of 42 U.S.C. § 405(g) and remanded to the Acting Commissioner for further consideration consistent with this order.

## BACKGROUND

Plaintiff, ALAN McREYNOLDS, was born in 1953 and was 51 years old on the alleged date of disability onset of June 24, 2004 (*see* AR. 130-31, 132-34). Plaintiff completed the 11th grade in school and has not obtained his GED (AR. 1388).

According to the ALJ, "During the relevant period, the claimant had the following severe impairments:  osteoarthritis, osteoporosis, history of T5 fracture, acid reflux, cochlear dysfunction, affective disorder, depression, anxiety, and substance abuse in variable remission (20 CFR 404.1520(c) and 416.920(c))" (AR. 1406).

## PROCEDURAL HISTORY

Plaintiff's applications for disability insurance benefits ("DIB") pursuant to 42 U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act were denied initially and following reconsideration (*see* AR. 71-86). The Court adopts plaintiff's uncontested Procedural History (see Dkt. 17, pp. 2-3). Plaintiff's third requested hearing was held

1   before Administrative Law Judge Michael Gilbert ("the ALJ") on October 23, 2014 (*see*

2   AR. 1357-1400). On March 27, 2015, the ALJ issued a written decision in which the ALJ

3   concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* AR.

4   1306-56).

5       In plaintiff's Opening Brief, plaintiff raises the following issues: (1) Whether the

6   ALJ properly evaluated the medical evidence; (2) Whether the ALJ properly evaluated

7   plaintiff's testimony; (3) Whether the ALJ properly evaluated the lay evidence;

8   (4) Whether the ALJ properly assessed plaintiff's RFC; (5) Whether the ALJ erred by

9   basing his step five finding on an RFC assessment that did not include all of plaintiff's

10  limitations; and (6) Whether this Court should remand the case for an award of benefits

11  (*see* Dkt. 17, p. 2). Plaintiff also includes a section entitled "De Facto Reopening"

12  wherein he alleges that "this Court should hold that the ALJ *de facto* reopened the prior

13  determinations" (*id.*, p. 3).

14

15              STANDARD OF REVIEW

16      Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's

17  denial of social security benefits if the ALJ's findings are based on legal error or not

18  supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d

19  1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.

20  1999)).

21

22

23

24

1

DISCUSSION

2

    **(1)    Whether the Court should hold that the ALJ *de facto* reopened the prior determinations.**

3

4

    Plaintiff argues that the ALJ *de facto* reopened the prior applications for benefits.

5

Plaintiff further argues that plaintiff "filed prior applications for disability benefits on

6

March 31, 2006, and the determinations on those applications can be reopened 'for any

7

reason'" (Dkt. 17, p. 3). Plaintiff goes on to argue that "[b]ecause the ALJ discussed

8

evidence from the prior period, and failed to address the issue of reopening, this Court

9

should hold that the ALJ *de facto* reopened the prior determinations" (*id.*).

10

    "[W]here the Commissioner considers 'on the merits' the issue of the claimant's

11

disability during the already-adjudicated period ... a *de facto* reopening occurs, [and] the

12

Commissioner's decision as to the prior period is subject to judicial review." *Lester v.*

13

*Chater*, 81 F.3d 821, 827 n.3 (9th Cir. 1995) (citing *Krumpelman v. Heckler*, 767 F.2d

14

586, 589 (9th Cir. 1985); *McGowen v. Harris*, 666 F.2d 60, 65 (4th Cir. 1981)).

15

    Here, the ALJ considered on the merits the issue of plaintiff's disability, with an

16

alleged onset date of June 24, 2004 (AR. 130-31; 132-34). Plaintiff's prior applications

17

for DIB and SSI, filed on April 6, 2006, also alleged a disability onset date of June 24,

18

2004 (AR. 915). Thus, both applications involve assessment of disability over the same

19

periods, and the Court concludes the ALJ *de facto* reopened the issue of plaintiff's

20

disability over the already adjudicated period.

21

    Defendant argues that the ALJ "did not specifically address the issue of

22

reopening" because "the period under consideration was not set by the ALJ, but by the

23

24

District Court that remanded the case to him based on the application for benefits at issue" (Dkt. 18, p. 16) (citing AR. 1450) ("This further consideration should be limited to the closed period of June 24, 2004 through May 13, 2008.")). However, defendant's argument misses the mark. The record reflects that the Court remanded this matter for further consideration based upon an alleged onset date of June 24, 2004 (*see* AR. 1431-50). Thus, the Court did not arbitrarily pick the alleged onset date. Moreover, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("we may not uphold an agency's decision on a ground not actually relied on by the agency") (citing *Chenery Corp*, 332 U.S. at 196). Nothing in the evidence of record before the Court suggests that the ALJ chose not to discuss reopening based upon the Court's previous decision, and the Court declines to entertain any post hoc rationalizations that attempt to intuit what the ALJ may have been thinking when he did not discuss reopening the prior period.

**(2)     Whether the ALJ properly evaluated the medical evidence.**

*(a) Physical Impairments*

Plaintiff contends the ALJ erred in evaluating the medical opinions of Steven Bradley, M.D., Joseph Zygar, P.T., and Mike Myers, PA-C, all of whom assessed physical limitations (*see* Opening Brief, Dkt. 17, pp. 4-6).

i.     Dr. Steven Bradley

Plaintiff avers the ALJ erred in his treatment of Dr. Bradley's opinion because: (1) the RFC does not properly account for Dr. Bradley's opinion that plaintiff would need to adjust positions frequently; (2) Dr. Bradley's findings supported plaintiff's testimony that he would need to change positions at will as well as recline and walk around as needed; (3) the ALJ should have based his decision on Dr. Bradley's findings that plaintiff was unable to perform work from June 25, 2004 to the date of the exam; (4) Dr. Bradley's opinion is supported by a January 26, 2007 hip x-ray; and (5) Dr. Bradley's opinions were consistent with the vocational expert's testimony (Dkt. 17, pp. 4-5)

Dr. Steven Michael Bradley, M.D. was plaintiff's treating provider from October 2004 to March 2006 (AR. 1336). On October 29, 2004, Dr. Bradley diagnosed plaintiff with a T5 compression fracture, among other diagnoses (*see* AR. 209). Dr. Bradley charted his plan for plaintiff to initiate physical therapy/occupational therapy "to help patient maximize his activities of daily living given his restrictions with his compression fracture" (*see id.*). On June 3, 2005, Dr. Bradley opined that plaintiff "has been unable to perform any type of work activity from the date of injury, June 25, 2004, to current. The patient is not expected to be returned [sic] to work" (AR. 228). He also indicated that "[p]rojected medical findings that show this patient is unable to work because of this work-related condition include T5 compression fracture and osteoporosis" (*id.*). He assessed specific limitations, such as restriction to "weight bearing less than 30 pounds" and noted plaintiff "has reached maximal medical improvement" (*id.*).

On December 9, 2005, Dr. Bradley charted plaintiff's report of "significant back pain with problems with reaching and lifting and twisting as well as sitting in one place for greater than 20 minutes" (AR. 234). Dr. Bradley observed that plaintiff, "sitting in a chair, needed to adjust positions rather frequently" (*id.*). Dr. Bradley also noted that although vocational services offered to pay for breaks during plaintiff's commute every thirty minutes that "this would not be acceptable," as plaintiff required "breaks every 20 minutes" (AR. 235).

The ALJ is responsible for evaluating a claimant's testimony and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). Determining whether or not inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999)). If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and evaluating a claimant's testimony lies with the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (quoting *Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (citing *Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980))).

It is not the job of the court to reweigh the evidence: If the evidence "is susceptible to more than one rational interpretation," including one that supports the decision of the Commissioner, the Commissioner's conclusion "must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citing *Morgan*, 169 F.3d at 599, 601). The reviewing

court is "not deprived of [its] faculties for drawing specific and legitimate inferences

from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

"Magic words" on the part of an ALJ are not required. *See id.* Similarly, the ALJ may

"draw inferences logically flowing from the evidence." *Sample*, 694 F.2d at 642 (citing

*Beane v. Richardson*, 457 F.2d 758 (9th Cir. 1972); *Wade v. Harris*, 509 F. Supp. 19, 20

(N.D. Cal. 1980)). However, an ALJ may not speculate. *See* Social Security Ruling

("SSR") 86-8, 1986 WL 68636, at *8.

Here, the ALJ gave significant weight to Dr. Bradley's opinion that the "pain

limited the claimant's ability to stand, sit, bend or twist" (AR. 1337) (citations and

quotations omitted). With respect to Dr. Bradley's opinion regarding plaintiff's need to

alternate between sitting and standing, the ALJ "agree[d] that the claimant's [sic] should

be allowed a sit-stand option every 20 minutes" (AR. 1336). The ALJ noted that he

"included a sit/stand option, allowing the claimant to change positions between sitting

and standing every 20 minutes, which is consistent with the claimant's complaints and

the doctor's note that the claimant" needed to adjust positions frequently (AR. 1337).

With respect to Dr. Bradley's opinion that plaintiff was disabled, the ALJ stated:

> Dr. Bradley further asserted the claimant had been 'unable to perform any
> type of work activity from the date of injury, June 25, 2004, to current' and
> that he 'is not expected to be returned to work.' He attributed this alleged
> inability to work to the T5 compression fracture and osteoporosis and
> reported that the claimant's 'specific restrictions' were weightbearing less
> than 30 pounds. The undersigned has considered this portion of the opinion
> but gives it very little weight because it [is] a conclusory declaration of
> disability and not a medical opinion. The doctor appears to have equated
> the inability to lift more than 30 pounds to being 'unable to perform any
> type of work activity.' While such a lifting restriction would certainly
> restrict the claimant from performing the claimant's past work as a roofer, it

1  of course does not automatically result in a finding of disability under the
2  Social Security Act. Considering the context of Dr. Bradley's treatment of
   the claimant, namely, that he was the designated L&I provider with regard
3  to the claimant's industrial claim and that the visit at which the doctor
   offered this statement was to complete paperwork required by L&I, the
4  undersigned finds it reasonable to conclude that Dr. Bradley's statement
   related to the job of injury, not the universe of all occupations. This
5  conclusion is bolstered by the doctor's subsequent approval of the material
   handler/warehouse position as offered by the employer of injury, after
6  adjusting the lifting/carrying capacity down to 30 pounds (from 35 to 40
   pounds).  If the doctor truly felt that the claimant was unable to perform
7  any work activity, he would not have approved that job.

8  (AR. 1336-37) (citations omitted). The ALJ went on to note that "even if Dr. Bradley

9  indeed opined that the claimant was unable to work in any job, this opinion is entitled to

10  no deference, for it is not a medical opinion … While the regulations require deference to

11  the treating opinion, such deference is due only to medical opinions, not legal ones" (AR.

12  1337). Therefore, the ALJ's conclusion to give very little weight to Dr. Bradley's

13  conclusion that plaintiff was "'unable to perform any type of work activity from the date

14  of injury, June 25, 2004, to current' and that he 'is not expected to be returned to work'"

15  is supported by substantial evidence in the record.

16      First, plaintiff asserts the ALJ erred in his treatment of Dr. Bradley's opinion

17  because the RFC does not properly account for Dr. Bradley's opinion that plaintiff would

18  need to adjust positions frequently (Dkt. 17, pp. 4-5). As evidence of the error, plaintiff

19  points to Dr. Bradley's December 9, 2005 treatment note that the plaintiff needed to

20  "adjust positions rather frequently" (Dkt. 17, p. 4) (citing AR. 234). However, plaintiff

21  ignores Dr. Bradley's other note during the same visit that plaintiff "continues to have

22  significant back pain with problems … sitting in one place for greater than 20 minutes"

(AR. 234). Plaintiff also fails to address Dr. Bradley's addendum to the visit wherein he opined that plaintiff would be unable to take a job with a long commute, even if the employer paid for breaks every thirty minutes, because plaintiff would need breaks from sitting every 20 minutes (AR. 235). Dr. Bradley did not opine that plaintiff would need more frequent breaks than every 20 minutes. Consistent with Dr. Bradley's opinion, in the RFC, the ALJ included a limitation that plaintiff would be "required a sit/stand option, allowing him to alternate between sitting and standing, while remaining on task, at 20-minute intervals" (AR. 1316). Accordingly, the ALJ properly accounted for Dr. Bradley's opined limitation regarding plaintiff's sit-stand requirements, and plaintiff has demonstrated no error.

Second, plaintiff avers the ALJ erred because Dr. Bradley's findings support plaintiff's testimony that he would need to change positions at will and would need to recline and walk around as needed (Dkt. 17, pp. 4-5). However, as noted by defendant, Dr. Bradley's opinion was not as far-reaching as plaintiff suggests. As noted above, Dr. Bradley opined plaintiff would need to alternate between sitting and standing every 20 minutes (*see* AR. 284-85), and the ALJ incorporated that opined limitation in the RFC (AR. 1316). Nothing in Dr. Bradley's treatment notes indicates plaintiff would need additional limitations in the RFC, including the ability to sit-stand at will, to walk around, or to recline.

Third, plaintiff argues the ALJ should have based his ultimate disability decision on Dr. Bradley's findings that plaintiff was unable to perform work from June 25, 2004 to the date of the exam (Dkt. 17, pp. 4-5). As an initial matter, the Court disagrees with

the ALJ's statement that "even if Dr. Bradley indeed opined that the claimant was unable

to work in any job, this opinion is entitled to no deference, for it is not a medical opinion

… While the regulations require deference to the treating opinion, such deference is due

only to medical opinions, not legal ones" (AR. 1337). According to the Ninth Circuit,

"'physicians may render medical, clinical opinions, or they may render opinions on the

ultimate issue of disability - the claimant's ability to perform work.'" *Garrison v Colvin*,

759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Reddick*, 157 F.3d at 725). Although "'the

administrative law judge is not bound by the uncontroverted opinions of the claimant's

physicians on the ultimate issue of disability, [] he cannot reject them without presenting

clear and convincing reasons for doing so.'" *Reddick*, 157 F.3d at 725 (quoting *Matthews

v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (other citations omitted)). "A treating

physician's opinion on disability, even if controverted, can be rejected only with specific

and legitimate reasons supported by substantial evidence in the record." *Id.* (citing *Lester*,

81 F.3d at 830). Furthermore, for "treating sources, the rules also require that [the Social

Security Administration makes] every reasonable effort to recontact such sources for

clarification when they provide opinions on issues reserved to the Commissioner and the

bases for such opinions are not clear to us." SSR 96-5p, 1996 WL 374183, at *2. This

Ruling further indicates that "opinions from any medical source on issues reserved to the

Commissioner must never be ignored." *See id*.

Regardless, the Court nevertheless finds the ALJ's interpretation of Dr. Bradley's

opinion to be specific and legitimate, supported by the record as a whole. As noted above,

the ALJ is responsible for resolving ambiguities and conflicts in the medical evidence.

*Reddick*, 157 F.3d at 722 (citing *Andrews*, 53 F.3d at 1039). Here, the ALJ discussed the ambiguities regarding Dr. Bradley's opinion that the plaintiff was disabled from June 25, 2004, to the date of the examination, and the ALJ determined that Dr. Bradley was referring to plaintiff's former profession as a roofer (AR. 1336-37). The ALJ based this determination on a number of factors, including: (1) the context of Dr. Bradley's treatment, including that he was treating plaintiff as an L&I provider related to plaintiff's injury on the job as a roofer; (2) the visit and opinion were for the purpose of completing L&I paperwork related to the roofing injury and roofing job, not all occupations; and (3) subsequent treatment records indicating Dr. Bradley approved plaintiff for a different job (*id.*). All of the reasons offered by the ALJ for determining Dr. Bradley's opinion as to plaintiff's disability status related to the roofing job, and not to all jobs, are specific and legitimate and supported by the record as a whole.

Finally, plaintiff asserts in a conclusory manner that Dr. Bradley's opinion is supported by: (1) plaintiff's January 26, 2007 right hip x-ray, which showed moderate degenerative changes, and (2) the vocational expert's testimony (Dkt. 17, pp. 4-5; Dkt. 19, p. 2). However, plaintiff does not offer additional analysis or explain how these additional arguments relate to the ALJ's treatment of Dr. Bradley's opinion. Accordingly, plaintiff has failed to establish any specific error that the Court has not already considered related to Dr. Bradley, and the ALJ did not err in his treatment of Dr. Bradley's opinion.

    ii.  Joseph Zygar, P.T.

Plaintiff also argues that the ALJ erred in his treatment of physical therapist Joseph Zygar's opinion because the ALJ did not provide a valid reason for rejecting Mr.

Zygar's opinion regarding (1) plaintiff's ability to frequently lift or carry; (2) plaintiff's sitting, standing, and walking limitations; (3) plaintiff's limitation regarding bending and stooping, and (4) plaintiff's ability to maintain a full-time schedule (Dkt. 17, pp. 5-6).

On January 31, 2016, Mr. Zygar conducted a Physical Capacities Evaluation ("PCE") on plaintiff (*see* AR. 271-78). Mr. Zygar opined that plaintiff is capable of "lifting up to 22 lbs on an occasional basis from the floor. He can lift 20 lbs to shoulder and 15 lbs to overhead. He should do no frequent lifting from floor to shoulder or overhead height. He can occasionally carry 30 lbs, frequently carry 7.5 lbs 30 feet" (AR. 271; *see also* AR. 276). Mr. Zygar also opined plaintiff should "not do any frequent bending or lifting below waist height" and indicated plaintiff "demonstrated the ability to sit for ½ to 1 hour, stand for 1-2 hours, and walk for 1-2 hours" (AR. 271, 276). Mr. Zygar opined that, given plaintiff's fatigue and sweating related to the four hour exam, "[w]hether or not [plaintiff] can sustained [sic] an 8-hour day is questionable" (AR. 271). Finally, Mr. Zygar noted that plaintiff "needs to have instruction in proper sitting and lifting mechanics as well as proper body mechanics and postures, [and] [h]e also needs to be on a conditioning program" (AR. 277).

Pursuant to the relevant federal regulations, in addition to "acceptable medical sources," that is, sources "who can provide evidence to establish an impairment," 20 C.F.R. § 404.1513 (a), there are "other sources," such as friends and family members, who are defined as "other non-medical sources" and "other sources" such as physical therapists and physician assistants, who are considered other medical sources, *see* 20 C.F.R. § 404.1513 (d); *see also Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-24

1    (9th Cir. 2010) (citing 20 C.F.R. § 404.1513(a), (d)); *Cole v. Astrue*, 395 F. App'x 387,

2    389 (9th Cir. 2010); SSR 06-3p, 2006 WL 2329939 at *2. An ALJ may disregard opinion

3    evidence provided by both types of "other sources," characterized by the Ninth Circuit as

4    lay testimony, "if the ALJ 'gives reasons germane to each witness for doing so.'" *Turner*,

5    613 F.3d at 1224 (quoting *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)); *see also*

6    *Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). This is because in

7    determining whether or not "a claimant is disabled, an ALJ must consider lay witness

8    testimony concerning a claimant's ability to work." *Stout v. Comm'r*, *Social Security*

9    *Administration*, 454 F.3d 1050, 1053 (9th Cir. 2006) (citing *Dodrill v. Shalala*, 12 F.3d

10   915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d) (4) and (e), 416.913(d) (4) and (e)).

11

12          The Ninth Circuit has characterized lay witness testimony as "competent

13   evidence," noting that an ALJ may not discredit "lay testimony as not supported by

14   medical evidence in the record." *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009)

15   (citing *Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996)). Similar to the rationale

16   that an ALJ may not discredit a plaintiff's testimony as not supported by objective

17   medical evidence once evidence demonstrating an impairment has been provided,

18   *Bunnell v. Sullivan*, 947 F.2d 341, 343, 346-47 (9th Cir. 1991) (citation omitted), but may

19   discredit a plaintiff's testimony when it contradicts evidence in the medical record, *see*

20   *Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir. 1995) (citing *Allen v. Heckler*, 749 F.3d

21   577, 579 (9th Cir. 1984)), an ALJ may discredit lay testimony if it conflicts with medical

22   evidence, even though it cannot be rejected as unsupported by the medical evidence. *See*

23   *Lewis*, 236 F.3d at 511 (An ALJ may discount lay testimony that "conflicts with medical

24

evidence") (citing *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984); *Bayliss*, 427 F.3d at 1218 ("Inconsistency with medical evidence" is a germane reason for discrediting lay testimony) (citing *Lewis*, 236 F.3d at 511).

The ALJ gave Mr. Zygar's opinion "substantial weight in large part" but found plaintiff "not quite as limited as found by Mr. Zygar" (AR. 1339). In relevant part, the ALJ stated:

> The undersigned rejects Mr. Zygar's ban on frequent lifting/carrying and finds greater lifting/carrying capacity, based on the 'mild' back findings and the opinion by the osteoporosis specialist, Dr. Ott that the impairment would allow [plaintiff] to bear weights up to 30 pounds. The undersigned finds insufficient evidence in Mr. Zygar's exam that the claimant was as limited as he assessed in sitting, standing, and walking, as the extent of explanation for those tolerances was simply that he 'demonstrated the ability to sit for ½ to 1 hour, stand for 1-2 hours, and walk for 1-2 hours.' Aside from noting that the claimant needed instruction in proper sitting and standing mechanics he did not mention those activities further.
>
> … The undersigned finds insufficient evidence in Mr. Zygar's report to limit the claimant to 'seldom' bending/stooping, given the lack of detail in the examination and the claimant's demonstrated ability to bend to 4 inches of the floor.

(AR. 1339-40) (citations omitted). The ALJ also gave very little weight to Mr. Zygar's opinion that it is questionable whether plaintiff could sustain full-time work because the ALJ found that Mr. Zygar's opinion was based on plaintiff's body habitus and need to build endurance (AR. 1340). The ALJ determined that Mr. Zygar's opinion regarding plaintiff's ability to engage in work was not based on proper considerations under the social security regulations and, therefore, unnecessary to include in the RFC (AR. 1340). The Court finds that the ALJ offered germane reasons for rejecting portions of Mr. Zygar's opinion.

First, plaintiff complains that the ALJ did not provide valid reasons for rejecting Mr. Zygar's opinion regarding plaintiff's limitations regarding (1) lifting and carrying; (2) sitting, standing, and walking; and (3) bending and stooping (Dkt. 17, pp. 5-6). However for each of these opined limitations, the ALJ noted that Mr. Zygar's opinion was not supported by the objective findings during the examination (*see* AR. 1339-40), which is a germane reason for rejecting Mr. Zygar's opinion. *See, e.g.*, *Haberman v. Colvin*, No. 13-CV-05844 JRC, 2014 WL 3511124, at *6 (W.D. Wash. July 14, 2014). With respect to Mr. Zygar's opinion that plaintiff could lift or carry, the ALJ noted the opinion conflicted with Dr. Ott, plaintiff's osteoporosis specialist, which is another germane reason to discount that portion of Mr. Zygar's opinion. *See Lewis,* 236 F.3d at 511 (An ALJ may discount lay testimony that "conflicts with medical evidence") (citations omitted).

Second, plaintiff avers the ALJ erred in rejecting Mr. Zygar's opinion that plaintiff is limited in his ability to maintain a full-time schedule (Dkt. 17, pp. 5-6). Here, the ALJ noted Mr. Zygar based that opinion on plaintiff's body habitus and "deconditioning" (AR. 1340), and thus determined Mr. Zygar's opinion conflicted with SSR 96-8p, which provides that "[a]ge and body habitus are not factors in assessing RFC." *See* SSR 96-8P, 1996 WL 374184, *1 (July 2, 1996). The Court finds the ALJ's reason for assigning very little weight to this portion of Mr. Zygar's opinion is also germane, particularly given that the Social Security Regulations specifically prohibit consideration of a claimant's body habitus in determining disability. *See id.* Accordingly, the ALJ did not err in discounting

1    a portion of Mr. Zygar's opinion, and his decision is supported by substantial evidence in

2    the record as a whole.

3              iii.    Mike Myers, PA-C

4              Plaintiff also offers a conclusory argument that the ALJ erred in his treatment of

5    physician assistant Mike Myer's opinion regarding plaintiff's limitations (Dkt. 17, p. 6).

6    Plaintiff asserts that "[t]he ALJ stated that he was rejecting Mr. Myers's opinions.

7    Contrary to the ALJ's analysis, Mr. Myers's opinions are consistent with his clinical

8    findings, and they are consistent with the findings and opinions of Dr. Bradley and Mr.

9    Zygar" (*id.*). As with physical therapists, physician assistants are considered "other

10   medical sources", and an ALJ may disregard other medical source opinion evidence "if

11   the ALJ 'gives reasons germane to each witness for doing so.'" *Turner*, 613 F.3d at 1224

12   (citation omitted). It is not the job of this Court to determine if the evidence could lead to

13   a different conclusion than the one reached by the ALJ. Rather, this Court is charged with

14   evaluating whether or not the ALJ's conclusions are supported by substantial evidence in

15   the record. Here, with respect to the ALJ's evaluation of physician assistant Mike Myer's

16   opinion, it is supported by substantial evidence.

17

18            Mr. Myers completed DSHS physical evaluations of plaintiff on January 17, 2006,

19   July 17, 2006, and January 2, 2008 (*see* AR. 307-10; 372-75; 432-35). During each

20   examination, Mr. Myers opined plaintiff was limited to sedentary work and opined that

21   plaintiff's back impairment was moderate (*see id.*). At each visit, Mr. Myers also opined

22   that plaintiff's work activities were affected by his ability to lift, handle, and carry, but

23

24

Mr. Myers did not opine that plaintiff had any additional limitations (*see* AR. 309, 374, 434).

The ALJ considered Mr. Myers's opinion, but gave it "very little weight" noting that Mr. Myers's opinion was inconsistent with Drs. Ott's and Bradley's opinions that plaintiff "could lift up to 30 pounds, which significantly exceeds the lifting limitations of sedentary work" (AR. 1341). The ALJ also noted that Mr. Myer's opinion was unsupported by objective findings of each visit (*see* Ar. 1341-42).

The Court finds the ALJ offered germane reasons for discounting Mr. Myers's opinion. First, the ALJ found Mr. Myers's opinion restricting plaintiff to sedentary work conflicted with Drs. Ott's and Bradley's opinion that plaintiff can lift up to 30 pounds, which is a germane reason for rejecting Mr. Myers's opinion. *See Lewis*, 236 F.3d at 511. Second, the ALJ rejected Mr. Myers's opinion because it was not supported by the objective medical evidence at each visit, which is also a germane reason for rejecting Mr. Myers's opinion. Given that the ALJ offered two germane reasons for rejecting Mr. Myers's opinion, and his decision is supported by substantial evidence in the record as a whole, the ALJ did not err.

(b) *Mental Impairments*

Plaintiff also contends the ALJ erred in evaluating the medical opinions of Kimberly Wheeler, Ph.D. and various providers from Behavioral Health Resources, all of whom assessed mental limitations (*see* Dkt. 17, pp. 6-8).

i.      Dr. Kimberly Wheeler

Plaintiff contends the ALJ erred in his treatment of Dr. Wheeler's opinion because he failed entirely to address Dr. Wheeler's opinion that plaintiff "was markedly impaired in his ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting" (Dkt. 17, p. 6).

Dr. Wheeler conducted a Psychological/Psychiatric Evaluation on February 22, 2007 (AR. 279-95). Dr. Wheeler conducted a mental status examination and reviewed medical records to complete her assessment (*see id.*). Based on her examination, Dr. Wheeler opined that plaintiff is moderately limited in his ability to learn new tasks (AR. 281). With respect to social factors, Dr. Wheeler observed that plaintiff was moderately limited in his ability to relate appropriately to co-workers and supervisors and to care for himself (*see* AR. 281), and she assessed that plaintiff was markedly limited in his ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting (*id.*).

According to SSR 96-8p, a residual functional capacity assessment by the ALJ "must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *See* SSR 96-8p, 1996 WL 374184, *7. Although "Social Security Rulings do not have the force of law, [n]evertheless, they constitute Social Security Administration interpretations of the statute it administers and of its own regulations." *See Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989) (citing *Paxton v. Sec. HHS*, 865 F.2d 1352, 1356 (9th Cir. 1988); *Paulson v. Bowen*, 836 F.2d

1249, 1252 n.2 (9th Cir. 1988)) (internal citation and footnote omitted). As stated by the

Ninth Circuit, "we defer to Social Security Rulings unless they are plainly erroneous or

inconsistent with the [Social Security] Act or regulations." *Id.* (citing *Chevron USA, Inc.*

*v. NRDC, Inc.*, 467 U.S. 837, 842-45 (1984)) (additional citation omitted).

   Here, the ALJ considered Dr. Wheeler's opinion and noted that she "assessed no

more than mild limitations in most of the cognitive domains addressed on the DSHS

form" and the ALJ gave that portion of Dr. Wheeler's opinion significant weight (AR.

1342). The ALJ found insufficient evidence for Dr. Wheeler's opinion that plaintiff "had

a moderate limitation in the ability to learn new tasks" (AR. 1343). With respect to social

factors, the ALJ found Dr. Wheeler's assessment "both too restrictive and not restrictive

enough" finding:

> In the domains of relating appropriately to co-workers and supervisors and
> ability to care for himself, including personal hygiene and appearance[, t]he
> undersigned agrees with the limitation with regard to co-workers, given his
> reports that he did not get along with family, friends, neighbors, and others,
> due to depression and pain, but finds insufficient evidence the claimant
> would have similar problems with supervisors.

(AR. 1343).

   The ALJ did not address Dr. Wheeler's opinion that plaintiff is markedly limited

in his ability to respond appropriately to and tolerate the pressures and expectations of a

normal work setting, and the Court finds the ALJ's failure to do so was error. The ALJ

did not include any restrictions in plaintiff's RFC related to his ability to respond

appropriately to and tolerate the pressures and expectations of a normal work setting (*see*

AR. 1316). As noted above, an ALJ errs when he fails to discuss an opinion from a medical source that conflicts with the RFC assessment. *See* SSR 96-8p.

The Ninth Circuit has concluded that it is not harmless error for the ALJ to fail to discuss a medical opinion. *Hill v. Astrue*, 698 F.3d 1153, 1160 (9th Cir. 2012) ("the ALJ's disregard for [the doctor's] medical opinion was not harmless error and [the doctor's] opinion should have been considered") (citing 20 C.F.R. § 404.1527(c) (noting that this Ruling requires the evaluation of "every medical opinion" received)). According to the Ninth Circuit, when an ALJ ignores or improperly discounts significant and probative evidence in the record favorable to a claimant's position, such as an opinion from an examining or treating doctor, the ALJ "thereby provide[s] an incomplete residual functional capacity [RFC] determination." *See id.* at 1161. Furthermore, when the RFC is incomplete, the hypothetical question presented to the vocational expert relied on at step five necessarily also is incomplete, "and therefore the ALJ's reliance on the vocational expert's answers [is] improper." *See id.* at 1162. Here, the ALJ failed to discuss significant probative evidence that plaintiff is markedly limited in his ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting (*see* AR. 281). As the ALJ did not discuss the evidence and did not include the limitation in his RFC, the RFC was incomplete and the ALJ's reliance on the vocational expert was improper. Thus, the ALJ's error was harmful, and the Court concludes Dr. Wheeler's opinion regarding Plaintiff's mental impairments warrants further evaluation.

1

      ii.  Behavioral Health Resources

2

   Plaintiff also asserts the ALJ erred in his treatment of various providers at

3

Behavioral Health Resources (Dkt. 17, pp. 7-8). As the Court already has concluded this

4

matter should be reversed and remanded for further consideration of the medical evidence

5

regarding plaintiff's mental impairments, for the reasons stated and based on the relevant

6

record, the Court also concludes that all of the other medical and lay evidence regarding

7

plaintiff's mental impairments should be evaluated further following remand of this

8

matter. Because Behavioral Health Resources dealt exclusively with plaintiff's alleged

9

mental impairments, the Court will not address plaintiff's arguments regarding those

10

opinions.

11

12

   **(3)**  **Whether the ALJ properly evaluated plaintiff's testimony.**

13

   Plaintiff also contends that the ALJ erred in evaluating his testimony (Dkt. 17, pp.

14

8-15). If an ALJ rejects the testimony of a claimant once an underlying impairment has

15

been established, the ALJ must support the rejection "by offering specific, clear and

16

convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996)

17

(citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.1993)); *see also Burrell v. Colvin*,

18

775 F.3d 1133, 1137 (9th Cir. 2014) ("There is no conflict in the caselaw, and we reject

19

the government's argument that *Bunnell* excised the "clear and convincing"

20

requirement"); *Reddick*, 157 F.3d at 722 (citing *Bunnell*, 947 F.2d at 343, 346-47). As

21

with all of the findings by the ALJ, the specific, clear and convincing reasons also must

22

be supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *see*

23

*also Bayliss*, 427 F.3d at 1214 n.1 (citation omitted).

24

1       If the medical evidence in the record is not conclusive, sole responsibility for

2   resolving conflicting testimony and analyzing a claimant's testimony regarding

3   limitations lies with the ALJ. *Sample*, 694 F.2d at 642 (citing *Waters v. Gardner*, 452

4   F.2d 855, 858 n.7 (9th Cir. 1971) (*Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980)).

5   An ALJ is not "required to believe every allegation of disabling pain" or other non-

6   exertional impairment. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (citing 42

7   U.S.C. § 423(d)(5)(A) (other citations and footnote omitted)). Even if a claimant "has an

8   ailment reasonably expected to produce *some* pain; many medical conditions produce

9   pain not severe enough to preclude gainful employment." *Fair*, 885 F.2d at 603. The ALJ

10  may "draw inferences logically flowing from the evidence." *Sample*, 694 F.2d at 642

11  (citations omitted)).

12      Here, the ALJ found that "[a]fter considering the evidence of record, the

13  undersigned finds that the claimant's medically determinable impairments could

14  reasonably be expected to produce the symptoms alleged" but that "the claimant's

15  statements concerning the intensity, persistence, and limiting effects of these symptoms

16  during the period at issue are not fully consistent with the evidence of record" (AR.

17  1318). The ALJ also noted that "[t]he claimant based his disability claim in large part on

18  subjective complaints; therefore, the credibility of his allegations is of utmost importance

19  (AR. 1331). The ALJ largely rejected plaintiff's testimony based on (1) plaintiff's

20  inconsistent statements regarding his illicit drug use (AR. 1331-32); (2) plaintiff's

21  inconsistent statements regarding his physical impairments and actual treatment (AR.

22  1332-33); (3) plaintiff's activities of daily living (AR. 1335); and (4) plaintiff's purported

1  mental limitations compared to his activities of daily living (AR. 1334-35). Plaintiff

2  argues that the ALJ failed to offer specific, clear and convincing reasons for rejecting

3  plaintiff's testimony. As discussed below, the Court agrees in part.

4      First, the ALJ rejected plaintiff's testimony regarding his limitations because

5  plaintiff made inconsistent statements regarding his illicit drug use (AR. 1331-32). In

6  weighing a claimant's testimony, an ALJ may consider the plaintiff's reputation for

7  truthfulness as well as in inconsistencies in his statements, including statements

8  concerning drug use. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997);

9  *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). Here, the ALJ provided a

10  thorough breakdown of the evidence of record, detailing plaintiff's numerous inconsistent

11  statements regarding his illicit drug use (*see* AR. 1329-32). For example, in August 2004,

12  plaintiff denied any history of drug use (*see* AR. 203; *see also* AR. 230), but claimed

13  later that he had used methamphetamine as early as 1984, Vicodin as early as 1988, and

14  marijuana as early as 1966 (AR. 1165). In August 2007, plaintiff admitted to lying to his

15  counselor about the extent of his methamphetamine use (AR. 1111). Plaintiff testified at

16  his second hearing that he used methamphetamine one to two times per week between

17  2004 through 2007 (*see* AR. 1474), but in October 2007, plaintiff admitted to using

18  methamphetamine daily (*see* AR. 1164). In short, based on the record as a whole,

19  substantial evidence supports the ALJ's negative conclusions regarding plaintiff's

20  veracity concerning his drug abuse.

21      Second, the ALJ rejected plaintiff's testimony regarding his limitations because

22  plaintiff made inconsistent statements regarding his injuries and treatment (AR. 1332-33).

"Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). Again, the ALJ has offered cogent reasons for finding plaintiff's testimony is undermined by his inconsistent statements regarding his injuries and treatment. For example, plaintiff testified at his first hearing that doctors could not put a back brace on him due to the severity of his injuries (*see* AR. 733), but medical records demonstrate that plaintiff declined a back brace despite his doctor's opinion that the brace would assist plaintiff in his recovery (*see* AR. 204-05). In addition, plaintiff testified that he could not stand for longer than ten or fifteen minutes and that he could not sit without arm support (*see* AR. 1381-82), but on his PCE, plaintiff demonstrated the ability to sit for 30 to 60 minutes at a time and walk for 1 to 2 hours at a time (*see* AR. 276). Thus, based on the record as a whole, the ALJ did not err in finding plaintiff's testimony and statements regarding his limitations were inconsistent with the treatment records.

Third, the ALJ rejected plaintiff's testimony regarding his physical limitations as inconsistent with his activities of daily living (AR. 1334-35). "[T]he mere fact that a plaintiff has carried on certain daily activities . . . . does not in any way detract from her credibility as to her overall disability." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)). The Ninth Circuit has specified the two grounds for using daily activities to form the basis of an adverse credibility determination: (1) whether or not they contradict the claimant's other testimony and (2) whether or not the activities of daily living meet "the threshold for transferable work skills." *Orn*, 495 F.3d at 639 (citation omitted). The ALJ "must make

'specific findings relating to the daily activities' and their transferability to conclude that a claimant's daily activities warrant an adverse determination regarding if a claimant's statements should be credited. *Id.* (citation omitted). Here, the ALJ noted that plaintiff conducts activities of daily living that are inconsistent with his purported limitations, such as plaintiff "busting up some firewood" in 2007 (*see* AR. 1335 *quoting* AR. 279), ambulating well (*see* AR. 1335 *quoting* 1863), and generally conducting activities of daily living without apparent difficulty (*see* AR. 1335). Here, there is neither evidence to support that plaintiff's activities were "transferable" to a work setting nor proof that plaintiff spent a "substantial" part of his day engaged in transferable skills. *See Fair*, 885 F.2d at 603; *Orn*, 495 F.3d at 639.

Finally, the ALJ rejected plaintiff's testimony about his mental limitations because the ALJ determined that plaintiff's purported mental limitations were inconsistent with his activities of daily living (*see* AR. 1334-35). The Court already has concluded that the ALJ erred in reviewing the medical evidence related to plaintiff's mental impairments and that this matter should be reversed and remanded for further consideration, *see supra*, section 2. In addition, the evaluation of a claimant's statements regarding mental impairments relies in part on the assessment of the medical evidence. *See* 20 C.F.R. § 404.1529(c). Therefore, plaintiff's testimony and statements regarding his mental limitations should be assessed anew following remand of this matter. In addition, if necessary, in light of the Court's finding of error above, the ALJ shall also reassess whether plaintiff's activities of daily living meet the threshold for transferability of work skills.

**(4)     Whether the ALJ properly evaluated the lay evidence.**

Plaintiff also complains that the ALJ failed to properly evaluate the lay witness statement offered by his sister, Mary Schmidt, because (1) the ALJ improperly found that Ms. Schmidt could not observe plaintiff's sleep patterns; (2) the ALJ inappropriately determined Ms. Schmidt's statement were based on plaintiff's subjective complaints; and (3) the ALJ improperly found that Ms. Schmidt's statements were not directly observed (Dkt. 17, pp. 15-16).

Testimony from "other non-medical sources," such as friends and family members, *see* 20 C.F.R. § 404.1513 (d)(4), may not be disregarded simply because of their relationship to the claimant or because of any potential financial interest in the claimant's disability benefits. *Valentine v. Comm'r SSA,* 574 F.3d 685, 694 (9th Cir. 2009) (citing *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). In addition, according to the Ninth Circuit, absent "evidence that a specific [lay witness] exaggerated a claimant's symptoms *in order* to get access to his disability benefits," an ALJ may not reject that witnesses' testimony with a general finding that the witness is "an 'interested party' in the abstract." *Id.* As noted above, an ALJ may disregard opinion evidence "if the ALJ 'gives reasons germane to each witness for doing so.'" *Turner*, 613 F.3d at 1224 (quoting *Lewis*, 236 F.3d at 511).

The ALJ failed to credit fully Ms. Schmidt's lay witness testimony, in part, because:

> She said he had trouble sleeping and agreed that he had trouble with personal care due to pain. These reports are not observable by the sister and are therefore based on the claimant's subjective claims …. [T]he statement

1    fails to establish that the limitations were observed or that any observed
2    limitations were based on the claimant's[] impairments and not volitional,
     self-imposed limitations.

3    (AR. 1346). The Court finds the ALJ erred in part in evaluating Ms. Schmidt's testimony.

4         First, the ALJ rejected Ms. Schmidt's testimony because he determined that she

5    could not have observed plaintiff having trouble sleeping (AR. 1345). Plaintiff argues

6    that he was living with Ms. Schmidt and that she could have observed him have trouble

7    sleeping (*see* Dkt. 17, p. 16). However, Ms. Schmidt stated that plaintiff lived alone and

8    was homeless at the time of her statement (*see* AR. 168). Moreover, she noted that when

9    plaintiff stayed with her, he sleeps (*see* AR. 168). Thus, the ALJ's reason for rejecting

10   this portion of Ms. Schmidt's opinion that plaintiff has trouble sleeping is germane and

11   supported by substantial evidence.

12

13        Second, the ALJ rejected Ms. Schmidt's opinion as based on plaintiff's subjective

14   claims, particularly plaintiff's subjective complaints regarding personal care due to pain.

15   The Court has already instructed the ALJ to re-evaluate plaintiff's testimony and

16   statements regarding plaintiff's activities of daily living upon remand. Thus, the ALJ

17   shall also re-evaluate Ms. Schmidt's lay witness opinion regarding plaintiff's purported

18   lack of self care due to pain.

19        Third, the ALJ rejected Ms. Schmidt's lay witness opinion after determining that

20   she did not base her opinions on her own observations. The Court finds that substantial

21   evidence does not support the ALJ's finding that Ms. Schmidt's lay witness opinion is

22   not based on her own observations. Ms. Schmidt's opinion reflects that she wrote about

23   her observations when plaintiff was with her. For example, when answering a question

24

regarding what plaintiff does when he wakes up to when he goes to bed, Ms. Schmidt stated that "[w]hen he has stayed with me and my husband on occasion, he doesn't do much" (AR. 168). She then went on to detail plaintiff's activities when he stays at her home (*see id.*). When asked to explain any changes in his cooking habits, Ms. Schmidt prefaced her answer with "[w]hen at my house" and proceeded to answer the question (AR. 170). She again qualified another answer that she was not "sure" about plaintiff's housework "but when he has offered to do work around our house, he has been unable to" complete the task (AR. 170). Thus, substantial evidence does not support the ALJ's findings that Ms. Schmidt's opinion was not based on her own observations.

Fourth, the ALJ determined that plaintiff's limitations were self-imposed and volitional. Specifically, the ALJ determined that Ms. Schmidt's report that plaintiff only watched television and went to doctors was likely volitional given that plaintiff was not working and was living with family (AR. 1346). Thus, the ALJ rejected Ms. Schmidt's testimony regarding plaintiff's activities on that basis. However, the Court is already remanding this matter to reevaluate the medical evidence related to plaintiff's mental impairments. Mental impairments could reasonably be expected to produce symptoms such as an inability to complete tasks other than watching television or going to doctor's appointments. Accordingly, based upon the above errors, the ALJ shall also reevaluate Ms. Schmidt's lay witness opinion upon remand.

**(5)   Whether the ALJ properly assessed plaintiff's RFC and whether the ALJ erred by basing his step five finding on an RFC assessment that did not include all of plaintiff's limitations.**

As discussed in section 2, *supra*, had the ALJ properly weighed the medical evidence, the RFC and hypothetical questions posed to the vocational expert may have included additional limitations related to plaintiff's mental impairments. On remand, the ALJ shall re-evaluate the RFC to determine if additional limitations are warranted based upon plaintiff's mental impairments.  The ALJ shall also reevaluate Step Five findings, if necessary, in light of the Commissioner's reevaluation of plaintiff's mental impairments.

**(6)   Whether this Court should remand the case for an award of benefits.**

Finally, plaintiff argues this matter should be remanded for an award of benefits (Dkt. 17, pp. 18-19). Generally, when the Social Security Administration does not determine a claimant's application properly, "'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit has put forth a "test for determining when [improperly rejected] evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (quoting *Smolen*, 80 F.3d at 1292). It is appropriate when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman*, 211 F.3d at 1178 (quoting *Smolen*, 80 F.3d at 1292).

Here, outstanding issues must be resolved. *See Smolen*, 80 F.3d at 1292. Although the ALJ erred in his review of the medical opinion provided by Dr. Wheeler, her opinion is not uncontradicted. As noted above, the ALJ is responsible for evaluating a claimant's testimony and statements and resolving ambiguities in the medical evidence. *Reddick*, 157 F.3d at 722 (citation omitted). If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and analyzing a claimant's testimony and statements lies with the ALJ. *Sample*, 694 F.2d at 642 (citations omitted). Thus, the Court declines to remand this matter for an award of benefits.

<u>CONCLUSION</u>

Based on these reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further consideration consistent with this order.

**JUDGMENT** should be for plaintiff and the case should be closed.

Dated this 18th day of July, 2016.

_____
J. Richard Creatura
United States Magistrate Judge